# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| **RUFUS HARRIS, JR.,** | } | |
| **ROSETTA HARRIS,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Case No.:  3:16-cv-01917-MHH** |
| **v.** | } | |
| | } | |
| **JP MORGAN CHASE BANK,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

This case concerns defendant JP Morgan Chase Bank N.A.'s attempted foreclosure sale of a house in Colbert County, Alabama.[1]  The mortgagors of the house, plaintiffs Rufus and Rosetta Harris, filed this lawsuit to avoid the foreclosure and secure their interest in the house.  By previous order, the Court dismissed the Harrises' state law claims for negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, and fraud and the Harrises' federal statutory claims under TILA, TCPA, and ECOA.  (Doc. 27).  Pursuant to Federal Rule of Civil Procedure 56, Chase asks the Court to enter judgment in its

---

[1] As Chase stated in its corporate disclosure statement, its correct legal name is JP Morgan Chase Bank, N.A.  (Doc. 2).  The Court asks the Clerk to please make this party substitution on the record.

favor on the Harrises' remaining claims. (Doc. 53). For the reasons explained more fully below, the Court grants Chase's motion.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## II. FACTUAL BACKGROUND

On August 12, 2005, Mr. and Mrs. Harris executed a mortgage on their Muscle Shoals residence with Long Beach Mortgage Company in support of a

promissory note.  (Doc. 52-1, pp. 3-4, ¶¶ 3-4; Doc. 52-1, pp. 15-18, 20-28).  The note passed from Long Beach through a succession of creditors until Chase acquired the Harrises' note.  (Doc. 52-1, pp. 3-4 , ¶ 5).  In October 2009, Chase notified the Harrises that it would be servicing their loan.  (Doc. 52-1, p. 30).  In January 2013, Chase became the mortgagee on the Muscle Shoals property pursuant to an assignment of mortgage.  (Doc. 52-1, p. 4, ¶ 7; Doc. 52-1, pp. 61-62).

The Harrises missed their monthly mortgage payment in April 2010, and the Harrises did not make another monthly payment until July 2013.  (*See* Doc. 52-1, p. 5, ¶ 8; Doc. 52-1, pp. 32-59).  Under a trial modification, the Harrises made a mortgage payment in July 2013, and they made a double payment in September 2013.[2]  The Harrises acknowledge that they have made no other mortgage

---

[2] On May 30, 2013, Chase sent a trial modification agreement to the Harrises.  (Doc. 52-1, pp. 5-6, ¶ 11; Doc. 52-2, p. 90).  Under the trial modification agreement, the Harrises had to make three $1,233.09 "trial payments."  Those payments were due on July 1, 2013, August 1, 2013, and September 1, 2013 respectively.  (Doc. 52-1, p. 6, ¶ 11; Doc. 52-2, p. 90).  For the payment due on July 1, 2013, Chase received a Western Union wire on July 15, 2013 for $1,233.09.  (Doc. 52-1, p. 6, ¶ 12; Doc. 52-1, p. 45; Doc. 52-5, p. 6).  Chase next received a payment from the Harrises on September 11, 2013, via a Western Union wire transfer for $2,466.18.  (Doc. 52-1, p. 6, ¶ 12; Doc. 52-1, p. 45; Doc. 52-5, p. 6).  Because the Harrises did not make the three trial payments on time, on September 17, 2013, Chase ended the trial mortgage modification.  (Doc. 52-1, p. 6, ¶ 12; Doc. 52-1, pp. 80-82).

payments since April 2010, but they remain in possession of the house. (Doc. 52-1, p. 6, ¶ 12; Doc. 52-2, p. 13, tpp. 45-46; Doc. 52-2, p. 49, tp. 189).[3]

In September 2010, after the Harrises missed six mortgage payments, Chase sent Mr. Harris a notice of intent to foreclose if Mr. Harris did not cure the default by October 30, 2010. (Doc. 52-1, pp. 64-65). Mr. Harris did not make a payment after receiving Chase's letter. (Doc. 52-1, p. 54). As a result, on November 24, 2010, Chase gave Mr. Harris written notice that the company was accelerating the unpaid balance of the debt and was preparing to begin foreclosure proceedings. (Doc. 52-1, p. 5, ¶ 10; Doc. 52-1, pp. 67-68).

Mr. Harris requested mortgage assistance on October 1, 2013, on May 30, 2014, on June 4, 2014, and on March 18, 2015. (Doc. 52-1, pp. 7-9, ¶¶ 14-17; Doc. 52-1, pp. 84-98, 100-13, 115-30, 132-48). For each of the four requests for assistance, Chase requested a fully executed 4506T-EZ form and other documentation. (Doc. 52-1, p. 6, ¶ 13; Doc. 52-1, pp. 150-205).[4] Because Chase did not receive the required information, Chase denied the Harrises' request for loan modification. (Doc. 52-1, pp. 7-9, ¶¶ 14-17; Doc. 52-1, pp. 207-10, 211-22, 222-30).

---

[3] On October 18, 2018, the Court ordered Mr. and Mrs. Harris to deposit monthly mortgage payments of $1,700.00 with the Clerk of Court. (Doc. 63). The Harrises have not made the required payments. (Doc. 64).

[4] The record reflects that Chase repeatedly tried to reach the Harrises by telephone to discuss documentation that Chase required to consider the Harrises requests for assistance, but Chase was unable to reach the Harrises. (See, *e.g.*, Doc. 52-1, pp. 152, 154-56).

On June 8, 2015, Mr. Kenneth Lay, the Harrises' attorney, sent a qualified written request or QWR to Chase seeking information about the loan. (Doc. 52-1, p. 9, ¶ 19; Doc. 52-1, pp. 232-33). Chase wrote to Mr. Harris advising him that Chase needed his authorization to release confidential information to Mr. Lay. (Doc. 52-1, pp. 9-10, ¶ 20; Doc. 52-1, pp. 237-40; Doc. 52-2, p. 34, tpp. 130-31). In addition, between November 2015 and January 2016, Chase emailed Mr. Lay five times requesting a signed authorization. (Doc. 52-8, pp. 4-9). Chase responded to the June 8, 2015 QWR on February 8, 2016. Chase's response includes copies of the Harrises' loan transaction history, note, security instrument, payoff quote, and mortgage assignment and information about the unpaid principal balance and accrued interest. (Doc. 52-1, p. 10, ¶21; Doc. 52-1, pp. 242-78).

The Harrises allege that they submitted three more QWRs for information to Chase between February 2016 and July 2016. (Doc. 20, ¶ 93). Chase does not have records of these requests, but Mr. Lay produced the letters during discovery, and the three letters are exhibits to Mr. Harris's deposition. (Doc. 52-1, p. 10, ¶22; Doc. 52-2, pp. 269-74). Mr. Harris testified that he is sure that Mr. Lay sent the February 2016 QWR to Chase, but he has no personal knowledge regarding the June 2016 or July 2016 QWRs that Mr. Lay wrote. (Doc. 52-2, pp. 35-36). Chase's records indicate that it received a second request for information from Mr.

Lay in October 2016.  (Doc. 52-1, p. 10, ¶ 22; Doc. 52-1, pp. 280-81).[5]  Chase received and responded to the October 2016 QWR.  (Doc. 52-1, p. 11, ¶ 24; Doc. 52-1, pp. 283-84, 288-329).

On August 11, 2016, Chase notified the Harrises of its intent to accelerate and foreclose on their home.  (Doc. 52-1, ¶ 25).  Chase informed the Harrises that if they did not cure their mortgage default within 35 days then Chase would accelerate the loan.  (Doc. 52-1, pp. 326-29).  Chase then accelerated the loan, scheduled a foreclosure sale, and published notices in the Colbert County Reporter.  (Doc. 52-8, p. 10).  In an effort to stop the November 2, 2016 foreclosure sale the Harrises filed this action in state court.  (Doc. 1-1).  This lawsuit caused Chase to suspend foreclosure proceedings.  (Doc. 52-1, ¶ 26).  To date, the Harrises have neither attempted to repay the full amount due on the promissory note nor resumed making monthly payments.  (Doc. 52-2, p. 12, tpp. 43-44; Doc. 52-2, p. 46, tpp. 178-79).

### III.  DISCUSSION

Chase moves for summary judgment on all of the Harrises' remaining causes of action:  (1) breach of contract (Count Six), (2) false light (Count Eight), (3) defamation, libel, slander (Count Nine), (4) violation of the Real Estate Settlement Procedures Act (Count Eleven), (5) violation of the Fair Credit Reporting Act

---

[5] The Harrises' RESPA claim is based on the June 2015 and February, June, and July 2016 QWRs.  (Doc. 20, ¶ 93).

(Count Twelve), (6) violation of the Fair Debt Collection Practices Act (Count Thirteen), and (7) declaratory relief (Count Sixteen). The Court addresses each claim in turn.

## A. Breach of Contract Claim

The Harrises contend that Chase breached their mortgage contract by failing to provide a notice of default, failing to provide a proper notice of intent to accelerate, and failing to properly credit payments made towards the mortgage. (Doc. 20, ¶¶ 47-54). The Harrises also allege that Chase failed to abide by the terms of the temporary loan modification agreement. (Doc. 20, ¶ 53).

The elements of a breach of contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). The Harrises have not offered evidence of their performance under the mortgage contract. *See Hammett v. Paulding Cty.*, 875 F.3d 1036, 1049 (11th Cir. 2017) ("Although all reasonable inferences are to be drawn in favor of the nonmoving party, 'an inference based on speculation and conjecture is not reasonable'") (quoting *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotation omitted)). The Harrises state in their complaint that "[e]ven if [they] are in default," Chase is liable for breach of contract. (Doc. 1, p. 15, ¶ 53). That is a misstatement of

Alabama law. "[T]o establish that a defendant is liable for a breach of a bilateral contract, a plaintiff must establish that he has performed, or that he is ready, willing, and able to perform under the contract." *Winkleblack v. Murphy*, 811 So. 2d 521, 529 (Ala. 2001). To maintain their breach of contract claim, the Harrises must demonstrate their performance under the contract.

Chase has submitted evidence of the Harrises' default. Mr. Harris admitted in his deposition that he has not made a mortgage payment in seven years. (Doc. 52-2, pp. 46-47, tpp. 178-81; Doc. 52-2, p. 13, tp. 45). Mr. Harris testified: "Q: Okay. And so even though you haven't been making [mortgage payments], you've lived in the home the whole time? A: Yeah." (Doc. 52-2, p. 46, tp. 180). Mr. Harris also affirmed: "Q: So from the time you stopped making those payments in 2010 to now where you lived in the home, you would have owed around $146,599; right? A: Yes. Q: Okay. And you haven't made any of those payments? A: Huh? No." (Doc. 52-2, p. 46, tp. 178-79). This Court ordered the Harrises to deposit monthly mortgage payments with the Court. (Doc. 63). The Harrises have not complied with the order. (Doc. 64).

The Harrises did not comply with the terms of the 2013 loan modification. The trial modification required the Harrises to make three consecutive mortgage payments. (Doc. 52-2, ¶ 11; Doc. 52-2, p. 79). The Harrises were obligated to make the trial payments on time; they didn't. The first modification payment was

due on July 1, 2013.  (Doc. 52-2, pp. 79, 90).  Western Union wire records show that the Harrises' payment was sent July 15, 2013.  (Doc. 52-5, p. 7).  The second payment was due on August 1, 2013.  (Doc. 52-2, pp. 79, 90).  The Harrises did not send a payment.  (*See* Doc. 52-5, p. 7).  The third payment under the modification plan was due September 1, 2013.  (Doc. 52-2, pp. 79, 90).  On September 11, 2013 the Harrises sent Chase $2,466.18.  (Doc. 52-5, pp. 7-9).  Each of these payments was late and breached the terms of the loan modification.

The Harrises have not offered evidence to rebut the evidence that Chase provided in support of its summary judgment motion.  Therefore, the Harrises' breach of contract claim fails as a matter of law, and the Court grants Chase's summary judgment motion as to that claim.

## B. <u>False Light Claim</u>

In Count Eight, the Harrises claim that Chase placed them in a false light by "either speaking or writing undesirable and negative character and reputation remarks about Harrises[.]" (Doc. 20, ¶ 61).  Under Alabama law:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (omitting internal quotation)). "A false-light claim does not require that the information made public be private; instead, the information made public must be *false*." *Butler*, 871 So. 2d at 12 (emphasis in original).

The Harrises state they were not in default and that Chase "held [the] Harrises up in a false light and made undesirable and negative and credit reputation remarks on or about [the] Harrises in the national credit reporting media and to [Mr. Harris's] homeowner insurance carrier." (Doc. 20, ¶ 63). Both assertions lack support in the record.

The evidence contradicts the Harrises' contention that they were not in default. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]hen documentary evidence blatantly contradicts a plaintiff's account … a court should not credit the plaintiff's version on summary judgment") (quoting *Witt v. W. Va. State Police*, 633 F.3d 272, 276-77 (4th Cir. 2011)) (internal citation and quotation omitted). As discussed above, Mr. Harris admits that he has not paid a regular mortgage payment to Chase since 2010. (*See* Section III.A; Doc. 52-2, p. 46, tp. 180). And the Harrises have not provided evidence to support their assertion that Chase contacted credit agencies or their homeowner's insurance company.

Because there is no evidence in the record that Chase publicized false information about the Harrises, the Court will grant Chase's motion as to Count Eight.

### C. Defamation, Libel, or Slander Claim

The Harrises argue that Chase is liable for defamation because Chase "published a notice in the newspaper which claimed that the Plaintiffs were in default making their mortgage payments and that Defendant was conducting a foreclosure sale as a result of Plaintiffs' alleged default on the mortgage debt." (Doc. 60, p. 23). A prima facie claim for defamation under Alabama law requires, "a false/defamatory statement concerning the plaintiff[.]" *Temploy, Inc. v. Nat'l Council on Comp. Ins.*, 650 F. Supp. 2d 1145, 1155 (S.D. Ala. 2009) (citing *Delta Health Grp. Inc. v. Stafford*, 887 So. 2d 887, 895-96 (Ala. 2004)). In their response to Chase's motion for summary judgment, the Harrises contend, "It is clear from the complaint that the Plaintiffs allege that they were not in default in making their mortgage payments and that the Defendant was conducting a foreclosure sale as a result of Plaintiffs' alleged default on the mortgage debt." (Doc. 60, p. 23). True enough, but a plaintiff cannot rest on unsubstantiated allegations at the summary judgment stage of a lawsuit. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). The evidence in the record indicates that the Harrises are and have been in default on their mortgage. The Harrises have not

offered evidence to establish that they were not in default. (*See* Section III.A-B).

No evidence indicates that Chase's contention that the Harrises are in default is

false. Because the Harrises are unable to satisfy the "false" element of their

defamation claim, the claim fails as a matter of law.[6]

### D. <u>RESPA Claim</u>

The Harrises allege that Chase violated RESPA by "failing to acknowledge

or properly respond to Harrises' Qualified Written Request (QWR)." (Doc. 20, ¶

92). RESPA requires that "[when] any servicer of a federally related mortgage

loan receives a qualified written request from the borrower (or an agent of the

borrower) for information relating to the servicing of such loan, the servicer shall

provide a written response acknowledging receipt of the correspondence within 5

days…." 12 U.S.C. § 2605.[7] A servicer must take action related to the borrower's

---

[6] Chase argued in its motion to dismiss that the Harris' defamation and false light claims are preempted and barred by the FCRA. (Doc. 54, p. 4, n.1). Because the Harrises cannot satisfy the prima facie elements of either claim, the Court will not evaluate the preemption argument.

[7] A qualified written request is:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –
>
>> (i) includes or otherwise enables the servicer to identify the name and account of the borrower; and
>>
>> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

qualified written request within thirty days. 12 U.S.C. § 2605(e)(2). The Harrises

contend that Chase violated § 2605 and failed to respond to four requests dating

June 3, 2015, February 28, 2016, June 13, 2016, and July 18, 2016. (Doc. 20, ¶

93).

To prevail on a RESPA claim for failure to respond to a QWR, a plaintiff

must demonstrate that "'(1) the defendant is a loan servicer under the statute; (2)

the plaintiff sent a qualified written request consistent with the requirements of the

statute; (3) the defendant failed to respond adequately within the statutorily

required days; and (4) the plaintiff has suffered actual or statutory damages.'"

*McLaughlin v. Ocwen Loan Servicing, LLC*, No. 2:16-cv-02041-AKK, 2018 WL

3126752, at *6 (N.D. Ala. June 26, 2018) (quoting *Correa v. BAC Home Loans*

*Servicing LP*, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *6 (M.D. Fla.

Apr. 9, 2012)).

Chase responded to the June 2015 request in February 2016, after reaching

out to Mr. Lay and the Harrises at least five times to obtain authorization to

provide information to Mr. Lay. (Doc. 52-8, pp. 4-9). The February 28, 2016,

June 13, 2016, and July 18, 2016 QWRs appear in the record, and it is undisputed

that Chase, is a "loan servicer" within the meaning of RESPA, did not respond to

them. (Doc. 52-2, pp. 269-74; Doc. 61, pp. 12-13). Mr. Harris testified that he is

---

12 U.S.C. § 2605(e)(1)(B)(i)-(ii).

sure the February 28, 2016 QWR was sent to Chase. (Doc. 52-2, p. 35, tp. 133). Chase argues that Mr. Harris's testimony is not sufficient to establish the QWR because the Harrises have no proof that their lawyer sent the QWR to Chase. (Doc. 54, p. 30). For purposes of Chase's summary judgment motion only, the Court assumes that the Harrises' attorney sent all four of the QWRs to Chase, and Chase failed to comply with § 2605.

The Harrises' RESPA claims fails as a matter of law because the Harrises can show no damages resulting from Chase's failure to respond to them on time. *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016); *Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833, 836 (11th Cir. 2010) (requiring a plaintiff to identify facts related to actual or statutory damages). Damages are an essential element of a RESPA claim. *Renfroe*, 822 F.3d at 1246. RESPA provides that "actual damages" arise "as a result of" the servicer's alleged violation. 12 U.S.C. § 2605(f)(1)(A). The Eleventh Circuit Court of Appeals construes "actual damages" broadly. *See McLean v. GMAC Mortg. Corp.*, 398 Fed. Appx. 467 (11th Cir. 2010). But a "plaintiff must present evidence to establish a causal link between the [servicer's] noncompliance and [her] damages." *Renfroe*, 822 F.3d. at 1246.

In their amended complaint, the Harrises allege that Chase's failure to respond to the QWRs resulted in the following injuries:

93. … Because of said violations of said acts, the Harrises were damaged because they were not informed of the information regarding their loan. Because the Defendants failed to give this information to the Harrises, they were not able to stop the foreclosure on their home. … [And] they were unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure was set. Because of said violations of said acts, the Plaintiff[s] were damaged because they had to hire an attorney to file a lawsuit to stop the foreclosure sale and incurred attorney fees and expenses exceeding $6,000.00 to stop the foreclosure sale of their home. Ultimately, Plaintiffs had to file a lawsuit which cost more money and expenses due to the court filing fees and more attorney fees. Moreover, since this foreclosure process went on for several months, Plaintiffs lost business clients and their income suffered as a result. Furthermore, it effected his standing and reputation in the community which suffered as a result of this process no being properly addressed by Defendant. Plaintiffs suffered damages by Defendant's failure to comply with the RESPA law because they were unable to get a proper accounting of the fees and charged owed on the account to cure any alleged default and as a result two foreclosure sales were set.

(Doc. 20, ¶ 93). The Court discusses each type of injury alleged in turn.

        i.    <u>Inability to get a proper accounting.</u>

On February 8, 2016, Chase sent the Harrises, through their attorney, a letter informing them of the unpaid principal balance, accrued interest, escrow advances, other fees and advances, and loan transaction history for their mortgage loan. (Doc. 52-2, p. 232). Chase attached copies of the loan transaction history, note, security interest, payoff quote, and assignment of mortgage. (Doc. 52-2, pp. 232-

68).[8]  Nearly three weeks later, Mr. Lay prepared the February 28, 2016 QWR that

Mr. Harris testified Mr. Lay sent to Chase.  (Doc. 52-2, pp. 269-70).  The QWR

requests, among other things, the loan transaction history, the name, address, and

telephone of the current holder of original mortgage note, an itemized statement of

the full amount needed, and screenshots of the history of the accounts associated

with this loan.  (Doc. 52-2, pp. 269-70).  Most of this information appeared in the

materials that Chase mailed to the Harrises in early February 2016.  The Harrises

took no action after receiving the information in early February 2016 and

continued to miss their monthly payment obligations.  (*See* Doc. 52-1, pp. 32-59).

On November 2, 2016, Chase mailed Mr. Lay a response to a QWR that was

identical to the one submitted on February 28, 2016.  (Doc. 52-2, p. 282).  No

evidence suggests the information that Chase provided changed between February

and November 2016.  Therefore, assuming for purposes of this motion that Chase

received the February 28, 2016, June 13, 2016, and July 18, 2016 QWRs, the

Harrises cannot prove damages because they (the Harrises) took no action in

response to the information they received in February 2016, and the information

did not change between February 2016 and November 2016, the second time

Chase replied to a QWR from Mr. Lay.  Therefore, the Harrises cannot

_____

[8] As indicated, the February 8, 2016 letter and attachments constitute Chase's response to the
Harrises' first QWR.  Chase spent months trying to obtain permission from the Harrises to
disclose the information requested to their attorney.  (Doc. 52-8, pp. 4-9).

demonstrate a causal connection between "not [being] informed of the information regarding their loan and unable to get a proper accounting" and actual damages.

      ii.    <u>Unable to stop the foreclosure on their home or cure alleged default.</u>

A causal connection also is lacking between Chase's failure to respond to the February, June, and July 2016 QWRs and the foreclosure on the Harrises' house. The Harrises last made an ordinary payment on their note in April 2010. Mr. Harris stated in his deposition that he has been unable to afford a mortgage payment. Nothing in Mr. Harris's circumstances changed between 2010 and the 2016 requests for information. Based on these facts, there is no causal connection between Chase's alleged RESPA violations and the Harrises' inability to stop foreclosure or cure default.

      iii.    <u>Hired an attorney to stop the foreclosure sale.</u>

As evidenced by the June 2015 QWR that Mr. Lay sent to Chase, the Harrises hired Mr. Lay well before February 2016, the date of the first QWR to which Chase did not respond. Therefore, there is no causal connection between the RESPA violation alleged and the Harrises' decision to hire an attorney.

      iv.    <u>Filed lawsuit.</u>

As discussed above, Chase sent the Harrises information about the unpaid principal balance, accrued interest, escrow advances, and total amount owed ($282.462.44) in February 2016. (Doc. 52-2, p. 232). The Harrises did not attempt

to make a payment after this, even when ordered by the Court to do so. (Doc. 52-2, pp. 32-59) (record of all payments Chase received from the Harrises). The Harrises stopped making payments in April 2010, and Chase refused to provide a loan modification because the Harrises did not make payments on time during a three-month trial period. The Harrises filed this lawsuit after Chase provided the November 2016 foreclosure notice. The Court finds no causal connection between the lack of response to the 2016 requests for duplicate information and the lawsuit that the Harrises filed.

v.  <u>Lost business clients and income suffered.</u>

The Harrises allege that Chase's failure to respond to their QWRs resulted in "lost business clients" or "loss of income." (Doc. 20, ¶ 93). Mr. Harris's testimony refutes this argument. Mr. Harris testified that he has been disabled since 2002. (Doc. 52-2, p. 7, tpp. 21-22 (explaining "I'm a hundred percent totally disabled.")). Mr. Harris's income comes solely from government benefits. (Doc. 52-2, p. 7, tpp. 22-24). Therefore, there is no connection between Chase's alleged RESPA violation and the Harrises' lost business or income.

Because the Harrises have not offered evidence of a causal link between the RESPA violations alleged and actual damages, the Court will enter judgment for Chase on the Harris' RESPA claim.[9]

## E. FCRA Claim

The Harrises contend that Chase reported inaccurate information to the national credit bureaus and, upon receiving notice of this error, refused to investigate. (Doc. 20, ¶ 95). "[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Chipka v. Bank of Am.*, 355 Fed. Appx. 380, 382 (11th Cir. 2009). A plaintiff has a private right of action under FCRA for violations of section 1681s-2(b) but only if "the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Jackson v. Bank of New York Mellon*, No. 16-062-CG, 2016 WL 4942085, at *14 (S.D. Ala. July 19, 2016) (dismissing FCRA claim where plaintiffs failed to plead that furnisher received notice of a dispute from credit reporting agency); *Peart v. Shippie*, 345 Fed. Appx. 384, 386 (11th Cir. 2009) ("[T]he statute explicitly bars private suits for violations of [§ 1681s-2(a)].").

---

[9] To recover statutory damages, a servicer must engage in "a pattern or practice of non-compliance with RESPA." *McLean*, 398 Fed. Appx. at 471. The Harrises have not pleaded that they are entitled to statutory damages, and the record contains no evidence to support such a recovery.

In their response to Chase's motion for summary judgment, the Harrises argue that "if the plaintiff has evidence that she [sic] made a dispute to a credit reporting agency (and she does), [and evidence] that the credit reporting agency notified the defendants of the dispute (and the defendants have failed to show she does not)," then the FCRA claim survives summary judgment. (Doc. 60, pp. 21-22). But there is no evidence in the record that Chase received notice of this dispute. *See Rice v. JP Morgan Chase Bank NA*, No. 7:14-cv-00318-LSC, 2014 WL 3889472, at *6 (N.D. Ala. Aug. 5, 2014) (dismissing the plaintiff's FCRA claim where the plaintiff failed to plead facts to suggest that the credit bureaus contacted the furnisher regarding the dispute). Mr. Harris admits that he did not contact a credit reporting agency or Chase about possible credit reporting errors. (Doc. 52-2, p. 41, tp. 159; Doc. 52-2, p. 42, tp. 161).

Because the record contains no evidence that suggests that Chase received notice of a credit dispute from a consumer reporting agency, the Court grants Chase's motion for summary judgment as to the Harrises' FCRA claim.

## F. **FDCPA Claim**

The Harrises allege that Chase committed several FDCPA violations, including: attempting to collect amounts not owed under the mortgage contract; seeking unjustified amounts; threatening legal action; revealing or discussing the nature of the Harrises' debt with third parties; failing to identify itself as a debt

collector; and falsely stating the amount of the Harrises' debt. (Doc. 20, ¶ 108). Chase argues that it is entitled to summary judgment on the Harris' FDCPA claim because Chase is not a "debt collector" for purposes of the FDCPA. (Doc. 54, p. 38). "[W]hether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA." *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 581-82 (11th Cir. 2012). The FDCPA defines "debt collector" as one who "uses any instrumentality of interstate commerce or the mails in the business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The FDCPA excludes from liability persons collecting a debt when the collection "concerns a debt which was not in default at the time it was obtained by such persons." 15 U.S.C. § 1692a(6)(F). Additionally, the legislative history of the FDCPA suggests that a mortgagee and its assignee are not debt collectors under the FDCPA when the debt is not in default when the mortgage-holder acquires the debt. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382, at 3-4 (1977)).

The evidence in the record indicates that the Harrises' loan was not in default when Chase began servicing the loan. The Harrises' mortgage loan was executed in favor of Long Beach. (Doc. 52-1, pp. 20-28). WaMu was the

successor in interest to Long Beach. (Doc. 52-1, p. 3, ¶ 5; Doc. 52-1, p. 30).

Chase acquired the Harrises' loan from WaMu and began servicing the Harrises'

loan in October 2009. (Doc. 52-1, p. 30). The Harrises first defaulted on the loan

in 2010. (Doc. 52-2, p. 12, tp. 44). Therefore, Chase attempted to collect

mortgage payments that the Harrises owed to Chase, not to "another" owner of

debt. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1719 (2017)

(FDCPA's "plain language seems to focus on third party collection agents

regularly collecting for a debt owner—not on a debt owner seeking to collect debts

for itself."). Because Chase is not a debt collector within the meaning of the

FDCPA, the Court grants Chase's motion for summary judgment as to the

Harrises' FDCPA claim.

### G. Declaratory Relief Claim

In their complaint, the Harrises request three forms of declaratory relief:

"(1) An Order declaring that they are not in default of their mortgage agreement

and declaring the notice of default is null and void[;] (2) [a]n order declaring that

Defendants have no right or authority to foreclose on the Harrises' property[;]

[and] (3) [a]n Order prohibiting Defendants from foreclosing on the Harrises'

property." (Doc. 20, ¶ 118). The "standard for a permanent injunction is

essentially the same as for a preliminary injunction except that the plaintiff must

show actual success on the merits instead of a likelihood of success." *Siegel v.*

*LePore*, 234 F.3d 1163, 1213 (11th Cir. 2000). For the reasons discussed above, the record indicates that the Harrises cannot show that they may succeed on the merits of their claims. Therefore, their claim for permanent injunctive relief fails.[10]

## IV. CONCLUSION

For the reasons explained above, Chase's motion for summary judgment is granted. All of the Harris' claims against Chase are dismissed with prejudice. The Court will enter a separate order closing the case.

**DONE** and **ORDERED** this January 15, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[10] The Harrises have not responded to Chase's argument concerning their request for declaratory relief other than to note that the request was in their complaint. (Doc. 60, p. 2). "In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).